# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 20-CV-2118 (AMD) (RER)

———————————

RARITAN BAYKEEPER, INC. (D/B/A NY/NJ BAYKEEPER)

VERSUS

FAZTEC INDUSTRIES, INC. AND DIFAZIO INDUSTRIES, LLC

———————————

**REPORT & RECOMMENDATION**

September 6, 2023

———————————

TO THE HONORABLE JUDGE ANN M. DONNELLY
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Raritan Baykeeper, Inc. d/b/a NY/NJ Baykeeper, ("Plaintiff" or "Baykeeper") filed a civil enforcement action against Defendants Faztec Industries, Inc ("Faztec"), DiFazio Industries, LLC ("DiFazio), and Marc DiFazio (collectively "Defendants") under the Federal Water Pollution Control Act, 33 U.S.C. § 1251–1387 (the "Clean Water Act" or "CWA"), to prevent Defendants' alleged pollution of Staten Island's waters and wetlands (ECF No. 1 ("Compl." at 1). The parties agreed to settle this case and moved the Court to enter the Proposed Consent Decree (the "Decree"). (*See* ECF No. 43; *see also* ECF No. 43-1 ("Consent Decree")). Your Honor referred the Motion to Approve the Proposed Consent Decree to me for a Report and Recommendation. (*See* Order dated 7/07/2023). After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that the Proposed Consent Decree be approved without modification.

1

## BACKGROUND

I. <u>Factual Background</u>

Baykeeper is a non-profit corporation with the "mission to protect, preserve, and restore the ecological integrity and productivity of the Hudson-Raritan Estuary." (Compl. ¶ 21). Defendants Faztec and DiFazio participate in the control and operation of industrial activities that take place at Faztec's facility (the "Facility") and at property owned by New York City and managed by the City's Department of Citywide Administrative Services (the "DCAS Site"). (*Id.* ¶¶ 3, 24–25). Plaintiff alleges that Defendants engage in various industrial activities at several lots that are built on top of and adjacent to wetlands, including the Saw Mill Creek Marsh, and wetlands adjacent to Pralls Creek and the Arthur Kill. (*Id.* ¶ 2). Specifically, at the DCAS Site, Plaintiff claims that Defendants filled in wetlands that are protected waters of the United States under the CWA. (*Id.* ¶ 4, *see also* Consent Decree at 1–2). Plaintiff also alleges that at both the Facility and the DCAS Site, Defendants discharged without a permit polluted stormwater associated with industrial activities into waters of the United States. (Compl. ¶¶ 5–6; *see also* Consent Decree at 1–2).

II. <u>Procedural History</u>

On August 28, 2019, Plaintiff sent the Defendants a notice of intent to sue for violations of the Clean Water Act at the Facility. (Compl. ¶ 15). On January 24, 2020, Plaintiff provided the Defendants with a second, more expansive notice of intent to sue that included violations that occurred at the DCAS Site. (Compl. ¶ 16). After sixty days without action from the Environmental Protection Agency ("EPA"), the State of New York, or the City of New York, Plaintiff initiated this action. (Compl. ¶¶ 17–18). Soon thereafter, discovery commenced. (Order dated 10/06/2020 (granting Revised Case Management Plan Order)). On January 27, 2023, the parties submitted a joint motion to stay discovery because they were finalizing a settlement agreement. (ECF No. 35).

2

The parties provided the Department of Justice ("DOJ") and the EPA with their Proposed Consent Decree to review as required under 33 U.S.C. § 1365(c)(3). (*See* ECF No. 42). In conjunction with the proposed settlement, the parties stipulated to dismiss DiFazio from this action. (ECF No. 40). On June 20, 2023, the DOJ notified the Court that it had reviewed the Proposed Consent Decree and did not object to its entry. (ECF No. 42.) The parties then moved the Court to approve the consent judgment on July 5, 2023. (ECF No. 43).

A. The Consent Decree

Defendants made a number of agreements to remediate their practices and come into compliance with the CWA. First, with respect to the Facility, according to the Proposed Consent Decree, Defendants submitted a Notice of Intent ("Notice") to be covered under the Multi-Sector General Permit for the Discharge of Stormwater Associated with Industrial Activity ("MSGP") for operations to the New York State Department of Environmental Conservation ("DEC"). (Consent Decree at 2.) The DEC acknowledged the Notice on January 13, 2021. (*Id.*). Defendants also agree to implement the most recent version of the Stormwater Pollution Prevention Plan ("SWPPP") in compliance with the MSGP and the Clean Water Act. (*Id.* at 7 ¶ 18). Further, within one year of the effective date of the Decree, Defendants agree to execute a Facility Best Management Practices ("BMP") Plan and to submit a SWPPP implementation report to Plaintiff. (*Id.* ¶ 19; *see also id.*, Exh. B). The BMP Plan requires Defendants to implement "best engineering practices and standards in the stormwater treatment and management industry," such as developing an inspection and maintenance schedule, installing a truck washing system to minimize discharges, and using a street sweeper. (*Id.*, Exh. B at 19). Under the terms of the Decree, once the SWPPP report is delivered, the parties enter a three-year monitoring period wherein Defendants will engage in

3

supplemental sampling and inspections in addition to monitoring requirements under the MSGP. (*Id.* at 7–8 ¶¶ 22–27).

Regarding the DCAS Site, Defendants are in the process of completing an environmental review prerequisite to secure a license with the City of New York, so that they can occupy the DCAS Site. (Consent Decree at 2, 4 ¶ 13). The license will allow Defendants to use the DCAS Site for storage of construction materials and equipment, and identifies various measures to "control discharges of polluted stormwater, prevent erosion and sedimentation, and prevent incursions." (*Id.* at 4 ¶ 13). Defendants agree not to engage in construction activities at the DCAS Site without a National Pollutant Discharge Elimination System Permit ("NPDES Permit"), which is issued under the CWA, or a SWPPP. (*Id.* at 4 ¶ 14). Moreover, Defendants agree to work toward obtaining permit requirements within one year of the effective date of the Proposed Consent Decree to conduct an environmental restoration project on one acre of the DCAS Site, which includes environmental benefit payments, wildlife monitoring, a restoration plan, and implementation and monitoring reports. (*Id.* at 5 ¶ 16).

The Decree also provides for general monitoring of both the Facility and the DCAS Site, inclusive of various site inspections, a corrective action plan should an issue be identified, and the requirement that Defendants provide Plaintiff with any documents related to government correspondence. (Consent Decree at 8–10 ¶¶ 28–33). In addition to other costs associated with litigation, the Decree requires Defendants to make an environmental benefit payment of $300,000 "for use on projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of, or other benefits to, Staten Island's waters, with first priority given to projects located in the Saw Mill Creek watershed." (*Id.* at 10 ¶ 34).

4

Plaintiff agrees to release Defendants from all claims in this action and to not pursue any other claim of relief stemming from the allegations set form in the 2019 or 2020 notice letters. (*Id.* at 13, ¶ 39). Plaintiff has already released the individual Defendant Marc DiFazio under the terms of this agreement. (*Id.*; *see also* ECF No. 40). Although the Proposed Consent Decree contains a mutual release, it does not preclude litigation should a future CWA violation occur or should enforcement of the Consent Decree be necessary. (Consent Decree at 13 ¶¶ 39–42).

## DISCUSSION

I. Legal Standard

To enter a consent decree, the court must find that the decree (1) "spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction," (2) "come[s] within the general scope of the case made by the pleadings," and (3) furthers the objectives of the law upon which the complaint was based." *Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir. 1989) (quoting *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986); *see also Riverkeeper, Inc. v. MLV Concrete Inc.*, No. 14-CV-3762 (LDH) (PK), 2017 WL 3172897, at *2 (E.D.N.Y. June 26, 2017) (applying the standard to a proposed consent decree arising under the CWA), *adopted by* 2017 WL 3172859 (July 25, 2017).

II. Analysis

First, pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over a civil action arising under 33 U.S.C. § 1365(a)(1).

Second, the Proposed Consent Decree falls within the scope of the case made by the pleadings. The Decree requires that Defendants come into compliance with the CWA by remediating wetlands impacted by previous industrial activity and implementing best management practices,

such as obtaining an NPDES Permit, implementing a SWPPP, and various other requirements that are in line with best engineering practices and standards.

Finally, the Proposed Consent Decree furthers the objectives of the Clean Water Act. The CWA aims to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Congress set out specific objectives to achieve this goal, including eliminating the discharge of pollutants into navigable waters, attaining water quality that protects fish, shellfish, and wildlife and provides for recreation in and on the water, and prohibiting the discharge of toxic pollutants. *Id.* § 1251(a)(1)-(3). The Proposed Consent Decree requires Defendants to comply with the CWA, implement the SWPPP, conduct an environmental restoration project, and make an environmental benefit payment of $300,000 to restore projects on Staten Island. (Consent Decree at 2, 4 ¶ 13, 5 ¶ 16, 7 ¶¶ 18–19, 10 ¶ 24). The Decree remedies the statutory violations and carves a path forward for restoring the wetlands. Accordingly, the Proposed Consent Decree is in line with the CWA's objectives.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Your Honor approve the Proposed Consent Decree. Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Judge Ann M. Donnelly within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's

Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

_____

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: September 6, 2023
       Brooklyn, NY